UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **RONALD GIBBS** and **BOBBI KAZMIERCZAK,** individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>**THE RESULTS COMPANIES, LLC**, a Delaware Corporation,<br><br>Defendant. | Civil Case No.: 7:18 -cv- 00170 |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Ronald Gibbs and Bobbi Kazmierczak, individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Complaint against Defendant The Results Companies, LLC, and allege upon information and belief, as follows:

### INTRODUCTION

1. Plaintiffs bring this action for themselves and all other similarly situated collective members to recover unpaid overtime wages, liquidated damages and reasonable attorney's fees and costs as a result of Defendant's willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.* and attendant regulations at 29 C.F.R. § 516, *et seq.*

2. Plaintiffs also bring this action for themselves and all other similarly situated Rule 23 class members to recover unpaid straight time wages, pre- and post- judgment interest, and reasonable attorney's fees and costs as a result of Defendant's breach of its contractual obligations to pay employees the agreed upon hourly rate for all hours worked.

3. Defendant is an international "business processing outsourcing services provider" that "manag[es] and operat[es] high performing call centers" in "28+ worldwide locations"

1

throughout the United States, Latin America, Australia and the Philippines.[1]

4. Plaintiffs and the putative FLSA collective and Rule 23 class members were employed by Defendant as hourly-paid Customer Service Representatives/Customer Advocates at its call centers to provide customer service to the customers of Defendant's clients.

5. The Customer Service Representatives/Customer Advocates were victims of Defendant's unlawful common policies and practices of failing to pay for all hours worked.

6. Specifically, Defendant implemented policies and practices of only paying the workers for the time when they were logged into the CIS system *and* switched to/maintained "available" status for inbound calls, thereby depriving them of compensation for various compensable work activities including:

    a. pre-shift time spent booting up their computers, logging into the computers, opening the required websites, software applications and/or systems relating to the Defendant's clients whose customers they serviced, and logging into the CIS system;

    b. post-shift time spent closing the websites, software applications and/or systems;

    c. "tech time" spent (i) troubleshooting and waiting for supervisor or other IT people to fix the computer problems when the computer failed to log them in, froze or was otherwise not functioning, (ii) rebooting the computer, and/or (iii) switching to another computer to go through the entire log-in process; and

    d. "auto-clock-out time" when the CIS system automatically switched them off "available" status, thereby clocking them out during their shifts, when the computer was not accessed for a period of time.

7. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Customer Service Representatives/Customer Advocates, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center workers of some of the abuses which are prevalent in the industry.[2]

---

[1] *See* Defendant's web pages: http://www.theresultscompanies.com/company/our-history and http://www.theresultscompanies.com/company/locations (last accessed Nov. 18, 2018).
[2] *See* U.S. Department of Labor Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA) (Revised July 2008), *available at* https://www.dol.gov/whd/regs/compliance/whdfs64.htm (last accessed Nov. 18, 2018).

8. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."[3]

9. More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."[4]

10. Further, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept."[5]

11. In addition, Defendant failed to include non-discretionary bonus pay such as performance bonus in the workers' *regular rate* of pay before statutory overtime compensation is computed, in violation of the FLSA and 29 CFR Part 778.

12. As a result of Defendant's unlawful common policies and practices, the Customer Service Representatives/Customer Advocates were not paid for all hours worked and they were deprived of rightfully earned straight time wages for hours worked up to forty (40) and overtime at a rate of not less than one and one-half (1.5) times their *regular rate* of pay for hours worked in excess of forty (40) per workweek.

13. Plaintiffs assert the FLSA claims on behalf of a putative FLSA collective, defined as:

> *All Customer Service Representatives and/or Customer Advocates* of *Defendant at any time from three (3) years prior to the filing of this Complaint through the date of judgment.*

14. Plaintiffs seek to send a Notice pursuant to 29 U.S.C. § 216(b) to all Customer Service Representatives/Customer Advocates of Defendant permitting them to assert FLSA

---

[3] *Id.*
[4] *Id.*
[5] *Id.*

claims in this collective action by filing their individual consent forms.

15. Plaintiffs assert the breach of contract claims on behalf of a putative class pursuant to Fed. R. Civ. P. 23, defined as:

> *All Customer Service Representatives and/or Customer Advocates of Defendant in the State of Texas at any time from four (4) years prior to the filing of this Complaint through the date of judgment.*

16. Defendant has willfully and intentionally committed widespread violations of the above-described statutes and corresponding regulations, in the manner described herein.

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

18. This Court has supplemental jurisdiction over Plaintiffs' state and common law claims pursuant to 28 U.S.C. §1367 because those claims derive from a common nucleus of operative facts as Plaintiffs' federal claims.

19. This Court has personal jurisdiction over Defendant because at all relevant times it has done business within the state of Texas and is registered with the Texas Secretary of State (Texas Taxpayer Number: 32043042616; Texas SOS File Number: 0801784070).

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district, employs the Customer Service Representatives/Customer Advocates in this District, and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this District.

## PARTIES

21. Defendant The Results Companies, LLC ("The Results Companies") is a

4

for-profit entity created and existing under and by virtue of the laws of the State of Delaware.

22. According to its website, The Results Companies has approximately twenty-two (22) call centers in the following eleven (11) states in the United States:

- Alabama – Mobile;
- Arizona – Phoenix;
- Florida – Fort Lauderdale, Lakeland and Winter Haven;
- Illinois – Streator;
- Kansas – Lawrence;
- Missouri – Kansas City, St. Joseph and Tiffany Springs;
- Pennsylvania – Blue Bell;
- Texas – Corpus Christi, Palestine, Paris and Wichita Falls;
- Utah – Provo;
- Virginia – Alverser, Galax, Martinsville, Richmond and Stuart; and
- West Virginia – Huntington.[6]

23. According to its' website, The Results Companies currently has job listings for Customer Service Representative position for nineteen (19) call center locations in ten (10) different states.[7]

24. The Results Companies is a privately held company which is majorly owned by One Equity Partners, a Private Equity Firm, and Results' management.[8]

25. According to the Texas Secretary of State website, The Results Companies has a mailing address at 100 NE 3rd Ave Ste 200, Ft Lauderdale, FL 33301-1102 and it has the following designed agent for service of process: Cogency Global Inc., 1601 Elm St., Suite 4360, Dallas, TX 75201.

26. Plaintiff Ronald Gibbs ("Gibbs") is a resident of the County of Wichita and State of Texas.

27. Mr. Gibbs was employed by Defendant as an hourly-paid Customer Service

---

[6] *See* Defendant's web pages: http://www.theresultscompanies.com/jobs/faqs and http://www.theresultscompanies.com/company/locations (last accessed Nov. 18, 2018).
[7] *See* **Exhibit A**, Defendant's job listing web pages retrieved via Adobe PDF software on November 17, 2018 and November 18, 2018.
[8] *See id.*

5

Representative/Customer Advocate at its 2236 Airport Drive, Wichita Falls, TX 76306 location from approximately November 2017 to August 2018.

28. Mr. Gibbs's written consent to become an FLSA party plaintiff is attached hereto as **Exhibit B.**

29. Plaintiff Bobbi Kazmierczak ("Kazmierczak") is a resident of the County of Wichita and State of Texas.

30. Ms. Kazmierczak was employed by Defendant as an hourly-paid Customer Service Representative/Customer Advocate at its 2236 Airport Drive, Wichita Falls, TX 76306 location from approximately October 2017 to September 2018.

31. Ms. Kazmierczak's written consent to become an FLSA party plaintiff is attached hereto as **Exhibit C.**

## GENERAL FACTUAL ALLEGATIONS

32. Defendant has operated and controlled an enterprise engaged in commerce as defined under the FLSA.

33. Defendant has generated over $500,000.00 in revenue per year.

34. Defendant has two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

35. Defendant has engaged in ordinary commercial activities within the meaning of the FLSA that result in sales made or business done.

36. Defendant was the "employer" of the Customer Service Representatives/Customer Advocates including Plaintiffs within the meaning of 29 U.S.C. § 203(d).

37. The Customer Service Representatives/Customer Advocates including Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1).

38. Defendant "suffered or permitted" Customer Service Representatives/Customer Advocates including Plaintiffs to work and thus "employed" them within the meaning of 29 U.S.C. §203(g).

39. Defendant, directly or indirectly, hired Customer Service Representatives/Customer Advocates including Plaintiffs and determined the rate and method of the payment of their wages.

40. Defendant controlled the work schedules, duties, protocols, applications, assignments and conditions of employment of Customer Service Representatives/Customer Advocates including Plaintiffs.

41. The position of Customer Service Representative/Customer Advocate has been classified at all times material to this Complaint as non-exempt.

42. Customer Service Representatives/Customer Advocates performed primary job duties that do not fall within any exemptions from overtime under the FLSA.

43. Plaintiffs estimate that there are approximately over three hundred (300) Customer Service Representatives/Customer Advocates employed at Defendant's Wichita Falls call center location,

44. Plaintiff Gibbs regularly worked Monday to Friday, five (5) days a week and sometimes also on the weekends.

45. From approximately November 2017 to February 2018, Gibbs' work schedule was generally from 10:30 a.m. to 7 p.m.

46. From approximately March 2018 to August 2018, Gibbs' work schedule was generally from 7 a.m. to 3:30 p.m. or 7 a.m. to 7 p.m.

47. Gibbs worked more than (40) hours in several workweeks.

48. Gibb's hourly rate was $10.50 before he was separated from the company.

49. Plaintiff Kazmierczak regularly worked 6 days a week and sometimes 7 days a week.

50. From approximately October 2017 to February 2018, Kazmierczak's work schedule was generally from 10:30 a.m. to 7 p.m.

51. From approximately March 2018 to April 2018, Kazmierczak's work schedule was generally from 7 a.m. to 3:30 p.m.

52. From approximately May 2018 to September 2018, Kazmierczak's work schedule was generally from 7 a.m. to 5:30 p.m.

53. Kazmierczak worked more than (40) hours in several workweeks.

54. Kazmierczak's hourly rate was $11 before she was separated from the company.

55. Customer Service Representatives/Customer Advocates regularly had an unpaid 30-minute meal break on each workday.

56. In order to perform their job duties, Customer Service Representatives/Customer Advocates were instructed to begin their workday by doing various start up activities, including, but not limited to, booting up their computers, logging into the computers, opening the required websites, software applications and/or systems relating to the Defendant's clients whose customers they serviced, and then logging into the CIS system and switching to "available" status for inbound calls.

57. Customer Service Representatives/Customer Advocates were only paid for the time they were switched to/maintained "available" status for inbound calls.

58. The pre-shift activities including time booting up their computers, logging into the computers, opening the required websites, software applications and/or systems relating to the Defendant's clients whose customers they serviced, and logging into the CIS system generally took several minutes before Customer Service Representatives/Customer Advocates were

8

switched to/maintained "available" status for inbound calls.

59. Defendant failed to compensate Customer Service Representatives/Customer Advocates for time spent performing such pre-shift activities.

60. At the end of their shift after they switched off "available" status, Customer Service Representatives/Customer Advocates spent post-shift time closing the websites, software applications and/or systems.

61. The post-shift time closing the websites, software applications and/or systems generally took a few minutes before Customer Service Representatives/Customer Advocates concluded their work for the day.

62. Defendant failed to compensate Customer Service Representatives/Customer Advocates for time spent performing such post-shift work-related activities.

63. Customer Service Representatives/Customer Advocates also encountered computer glitches – such as when the computer failed to log them in, froze or was otherwise not functioning – at the beginning of their shifts and/or during their shifts.

64. When the Customer Service Representatives/Customer Advocates encountered computer glitches, they would have to follow a troubleshooting procedure and wait for a supervisor or other IT people to fix the computer problems, reboot the computer, and/or switch to another computer to go through the entire log-in process.

65. Defendant failed to compensate Customer Service Representatives/Customer Advocates for such glitches/troubleshooting time, also known as "tech time."

66. The CIS system automatically switched Customer Service Representatives/Customer Advocates from "available" status to "walk away" or "gone home" status when the computer was not accessed for a period of time.

67. That is, when the computer was not accessed for a period of time, the system

automatically clocked Customer Service Representatives/Customer Advocates out during their shifts regardless of whether they were working or not.

68. Customer Service Representatives/Customer Advocates then had to switch back to "available" status to be on the clock again.

69. Defendant failed to compensate Customer Service Representatives/Customer Advocates for time Customer Service Representatives/Customer Advocates were forcibly clocked out during their shifts.

70. Defendant failed to record and keep complete and accurate time records of the work hours performed by Customer Service Representatives/Customer Advocates on each workday, in violation of 29 CFR Part 516.

71. Defendant failed to pay Customer Service Representatives/Customer Advocates for all hours worked.

72. Defendant also failed to include non-discretionary bonus pay such as performance bonus in the workers' *regular rate* of pay before statutory overtime compensation is computed, in violation of the FLSA and 29 CFR Part 778.

73. In additional to the base hourly wages, the Customer Service Representatives/Customer Advocates received bonus pay such as performance bonus.

74. The bonus pay such as performance bonus was non-discretionary.

75. As non-exempt employees, the Customer Service Representatives/Customer Advocates were entitled to full compensation for all overtime hours worked at a rate of one and one-half (1.5) times their *regular rate* of pay.

76. Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is

10

employed." 29 C.F.R. § 778.108.

77. No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. § 778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

78. 29 C.F.R. § 778.208 provides that "Bonuses which do not qualify for exclusion from the regular rate ... must be totaled in with other earnings to determine the regular rate on which overtime pay must be based. Bonus payments are payments made in addition to the regular earnings of an employee."

79. 29 C.F.R. § 548.502 provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate...."

80. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

81. As a result of Defendant's unlawful common policies and practices, Customer Service Representatives/Customer Advocates were deprived of rightfully earned straight time wages for hours worked up to forty (40) and overtime at a rate of not less than one and one-half

(1.5) times their *regular rate* of pay for hours worked in excess of forty (40) per workweek.

82. Defendant employs thousands of Customer Service Representatives/Customer Advocates nationwide, and knew or should have known that during each workday Customer Service Representatives/Customer Advocates performed compensable pre-, mid-, and post-shift work activities that went uncompensated and continue to go uncompensated due to Defendant's unlawful common policies and practices of only paying them for the time they were logged into CIS system and switched to/maintained "available" status for inbound calls.

83. Defendant's wrongful acts and/or omissions/commissions, as alleged herein, were not made in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the state and/or U.S. Department of Labor and/or any state department of labor, or any administrative practice or enforcement practice or enforcement policy of such departments.

84. Defendant's violations of the above-described federal and state wage and hour statutes and regulations were willful, arbitrary, unreasonable and in bad faith.

## COLLECTIVE ACTION ALLEGATIONS

85. Plaintiffs re-allege and incorporate all previous paragraphs herein.

86. Plaintiffs bring this action pursuant to Section 216(b) of the FLSA, as an opt-in representative action, for and on behalf of all Customer Service Representatives/Customer Advocates affected by Defendant's unlawful common policies and practices which include failing to overtime wages, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and attendant regulations at 29 C.F.R. § 516, *et seq.*

87. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of:

> *All Customer Service Representatives and/or Customer Advocates of Defendant at any time from three (3) years prior to the filing of this Complaint through the*

*date of judgment.*

Plaintiffs reserve the right to amend this definition as necessary.

88. Plaintiffs bring this collective action against Defendant to recover unpaid overtime wages, liquidated damages, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

89. The collective action further alleges a willful violation of the FLSA and seeks an additional, third year of limitations.

90. Plaintiffs seeks to send Notice to all Customer Service Representatives/Customer Advocates of Defendant permitting them to assert FLSA claims in this collective action by filing their individual consent forms, as provided by 29 U.S.C. § 216(b) and supporting case law.

91. Certification of the collective action under the FLSA is appropriate because the employees described herein are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiffs bring this collective action are similarly situated because they were subject to the same or similar unlawful policies and practices as stated herein and their claims are based upon the same factual and legal theories.

92. The employment relationships between Defendant and every collective member are the same and differ only by name, location, and rate of pay.

93. Plaintiffs anticipate that there will be no difficulty in the management of this litigation. This litigation presents claims under the FLSA, a type that have often been prosecuted on a class wide basis, and the manner of identifying the collective and providing any monetary relief to it can be effectuated from a review of Defendant's records.

94. Plaintiffs and the putative FLSA collective members demand a trial by jury.

### RULE 23 CLASS ACTION ALLEGATIONS

95. Plaintiffs re-allege and incorporate all previous paragraphs herein.

96. Plaintiffs also seek to maintain this action pursuant to Fed. R. of Civ. P. 23, as an opt-out class action, for and on behalf all Customer Service Representatives/Customer Advocates affected by Defendant's unlawful common policies and practices which include failing to pay straight time wages, in breach of Defendant's contractual obligations to pay employees the agreed upon hourly rate for all hours worked.

97. Plaintiffs bring this Rule 23 class action as to breach of contract claims on behalf of:

> *All Customer Service Representatives and/or Customer Advocates of Defendant in the State of Texas at any time from four (4) years prior to the filing of this Complaint through the date of judgment.*

Plaintiffs reserve the right to amend this definition as necessary.

98. Plaintiffs brings this Rule 23 class action as to the breach of contract claims against Defendant to recover unpaid straight time wages, pre- and post- judgment interest, and reasonable attorney's fees and costs.

99. The members of the Rule 23 class are so numerous that joinder of all class members in this case would be impractical. The Rule 23 class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

100. There is a well-defined community of interest among the Rule 23 class members and common questions of law and fact predominate in this action over any questions affecting each individual class member. These common legal and factual questions, include, but are not limited to, the following: whether the Rule 23 class members were properly compensated the agreed upon hourly rate for all hours worked.

101. Plaintiffs' claims are typical of those of the Rule 23 class members in that they and all other class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. All of the class

members were subject to the same corporate practices of Defendant, as alleged herein. Any lawsuit brought by an employee of Defendant would be identical to a suit brought by any other employee for the same violations and separate litigation would cause a risk of inconsistent results.

102. Plaintiffs were employed by Defendant in the same capacity as all of the class members. All class members were treated the same or similarly by management with respect to pay or lack thereof. This treatment included, but was not limited to, failure to pay the agreed upon hourly rate for all hours worked. Thus, there are common questions of law and fact which are applicable to each and every one of the class members.

103. Plaintiffs will fully and adequately protect the interests of the class members and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Plaintiffs and their counsel do not have interests that are contrary to, or conflicting with, the interests of the class members.

104. Defendant's corporate-wide policies and practices affected all class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each class member. Plaintiffs' claims arise from the same legal theories as all other class members. Therefore, this case will be more manageable and efficient as a Rule 23 class action. Plaintiffs and their counsel know of no unusual difficulties in this case.

105. Plaintiffs and the Rule 23 class members demand a trial by jury.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.*
### [Failure to Pay Overtime Wages]

106. Plaintiffs re-allege and incorporate all previous paragraphs herein.

107. 29 U.S.C. § 207(a)(1) provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods

for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

108. Defendant failed to compensate Plaintiffs and the FLSA collective members for all hours worked including time spent performing pre-shift, mid-shift and post-shift work-related activities as alleged herein.

109. Plaintiffs and the FLSA collective members worked more than (40) hours in several workweeks.

110. Defendant failed to include non-discretionary bonus pay such as performance bonus in the workers' *regular rate* of pay before statutory overtime compensation is computed.

111. Defendant failed to properly pay Plaintiffs and the FLSA collective members overtime wages at a rate not less than one and one-half (1.5) times their *regular rate* of pay for hours they worked in excess of forty (40) per workweek.

112. Defendant's conduct and practices, described herein, were willful, intentional, unreasonably, arbitrary, and in bad faith.

113. Because Defendant willfully violated the FLSA, a three (3) year statute of limitations shall apply to such violation pursuant to 29 U.S.C. § 255(a).

114. As a result of Defendant's unlawful common policies and practices described above, Plaintiffs and the FLSA collective members were illegally deprived of overtime wages earned, in such amounts to be determined at trial, and are entitled to recovery of such total unpaid amounts, liquidated damages, reasonable attorneys' fees, costs and other compensation pursuant to 29 U.S.C § 216(b).

## COUNT II
## BREACH OF CONTRACT
**[Failure to Pay Straight Time Wages]**

115. Plaintiffs re-allege and incorporate all previous paragraphs herein.

116. At all times relevant to this action, Defendant had contracts with Plaintiffs and the Rule 23 class members to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

117. The contractual hourly rates of the Plaintiffs and Rule 23 class members are identified in paystubs and other records that Defendant prepares as part of its regular business activities.

118. Plaintiffs and the Rule 23 class members performed under the contract by doing their jobs and carrying out the compensable pre-, mid-, and post-shift work activities that Defendant required or accepted.

119. By not paying Plaintiffs and the Rule 23 class members the agreed upon hourly wage for the pre-, mid-, and post-shift work activities performed each shift, Defendant systematically breached its contracts with Plaintiffs and the Rule 23 class members.

120. The remedies of Plaintiffs and the Rule 23 class members are not covered by the FLSA to the extent Defendant paid them more than the applicable minimum wage but less than 40 hours per week (i.e., pure "gap time" claims).

121. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and the Rule 23 class members spent performing pre-, mid-, and post-shift work, which is a fundamental part of an "employer's job."

122. As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiffs and the Rule 23 class members have been damaged, in an amount to be determined at trial.

123. These claims are appropriate for class certification under Rules 23(b)(2) and (b)(3) because Texas contract law governs the Rule 23 class members' breach of contract claims.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief against Defendant:

(A) A declaratory judgment that Defendant's wage practices alleged herein violate the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and attendant regulations at 29 C.F.R. § 516, *et seq.*;

(B) A declaratory judgment that Defendant breached its contractual obligations to pay employees the agreed upon hourly rate for all hours worked;

(C) An Order for injunctive relief ordering Defendant to comply with the FLSA and end all of the illegal wage practices alleged herein;

(D) Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

(E) Certifying this action as a class action pursuant to Fed R. Civ. P. 23 with respect to the breach of contract claims set forth herein;

(F) Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, e-mail addresses, telephone numbers, dates of birth, job titles, dates of employment and locations of employment of all FLSA collective and Rule 23 class members;

(G) Authorizing Plaintiffs' counsel to send notice(s) of this action to all FLSA collective and Rule 23 class members, including the publishing of notice in a manner that is reasonably calculated to apprise the FLSA collective members of their rights by law to join and participate in this lawsuit;

(H) Designating Lead Plaintiffs as the representatives of the FLSA collective and Rule 23 class in this action;

(I)   Designating the undersigned counsel as counsel for the FLSA collective and Rule 23 Class in this action;

(J)   Judgment for damages for all unpaid overtime wages and liquidated damages to which Plaintiffs and the FLSA collective members are lawfully entitled under the FLSA, 29 U.S.C. § 201, *et seq.*, and attendant regulations at 29 C.F.R. § 516, *et seq.*;

(K)   Judgment for damages for all unpaid straight time wages and pre- and post- interest to which Plaintiffs and the Rule 23 class members are lawfully entitled under the breach of contract claims;

(L)   An incentive award for the Lead Plaintiffs for serving as representatives of the FLSA collective and Rule 23 class in this action;

(M)   An award for reasonable attorneys' fees and costs in connection with this action as provided for by the FLSA and applicable laws and rules;

(N)   Judgment for any and all civil penalties to which Plaintiffs and the FLSA collective and Rule 23 class members may be entitled; and

(O)   Such other and further relief as to this Court may deem necessary, just and proper.

### JURY DEMAND

Plaintiffs, individually and on behalf of all other FLSA collective and Rule 23 class members, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled claims.

Dated: November 27, 2018

RESPECTFULLY SUBMITTED,

By: _____
Charles W. Branham
DEAN OMAR BRANHAM, LLP
302 N. Market Street, Suite 300

Dallas, TX 75202
T: (214) 722-5990
F: (214) 722-5991
tbranham@dobllp.com

*Local Counsel for Plaintiffs*


Jason T. Brown (to seek *pro hac vice*)
**BROWN, LLC**
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com

*Lead Counsel for Plaintiffs*